IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) ) | CIVIL ACTION NO. 10-0346-CG-N |
| PRAYER TABERNACLE EARLY CHURCH OF JESUS CHRIST NUMBER 1, | ) ) ) ) ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on plaintiff's motion for summary judgment (Doc. 25), defendant's response in opposition (Doc. 29), and plaintiff's reply (Doc. 30). The court finds that Scottsdale is entitled to a declaratory judgment stating that the policy issued by Scottsdale to defendant is void and that no coverage exists for the supplemental Hurricane Ivan or Katrina claims submitted by defendant due to the intentional material misrepresentations made by defendant. Therefore, plaintiff's motion for summary judgment is due to be granted.

1

## FACTS

This is a declaratory judgment action filed by Scottsdale Insurance Company ("Scottsdale") concerning a policy issued to defendant Prayer Tabernacle Early Church of Jesus Christ Number 1, and a supplemental claim submitted by the defendant in 2009 for losses that were incurred to commercial property as a result of Hurricane Ivan and/or Hurricane Katrina. Plaintiff's complaint seeks a declaration that the policy issued to defendant is void or that no coverage exists for any supplemental Hurricane Ivan or Katrina claims due to the defendant's intentional material representations. (Doc. 1). Defendant filed a counterclaim for appointment of an umpire and continuation of the appraisal proceedings under the insurance contract and for bad faith refusal to pay. (Doc. 10). Scottsdale moves for summary judgment as to its claims as well as defendant's counterclaims.

Defendant was insured by Scottsdale under consecutive policies of insurance that provided coverage from 7/22/2003 through 7/22/2006. (Doc. 1-1). Defendant submitted a claim for damage as a result of Hurricane Ivan on September 16, 2004, and Scottsdale paid defendant $6,753.23 on November 6, 2004. (Doc. 25-2). On August 29, 2005, defendant submitted a claim for damage resulting from Hurricane Katrina and Scottsdale paid defendant $33,036.77. A separate check was issued to defendant in the amount of $6,000 for damage to business personal property – an organ. (Doc. 25-4). Defendant states that the funds were applied to some repairs of

2

the church, but defendant does not recall in which bank account the funds have been deposited and has not provided any record, accounting, or other evidence showing what happened to the money or what it was used for. (Doc. 25-3, pp. 2-4).

Scottsdale received a letter dated August 6, 2009, from an attorney representing the defendant. (Doc. 25-7). The letter refers to an insurance claim and enclosed an estimate of damages that were incurred from Hurricane Ivan. (Doc. 25-7, p. 2). The letter demanded "that their claim be submitted to the appraisal provision of the insurance policy that was issued to them by Scottsdale" and requested that Scottsdale appoint its appraiser and contact the appraiser chosen by the defendant. (Doc. 25-7, pp. 2-3). The letter and the estimate of damages both list the date of the loss as September 24, 2004. (Doc. 25-7, pp. 2, 4). Defendant's representative later testified that the date was an error and that the date should have been September 16, 2004 – the date of Hurricane Ivan. (Doc. 25-6, pp. 10-12). The list of damages totaled $257,404.91. (Doc. 25-7, p. 12). The estimate itself has the date February 24, 2009. (Doc. 25-7, pp. 4-12).

Scottsdale responded with a letter dated August 13, 2009, acknowledging receipt of the August 6 letter and stating that the letter was the first notice it received of defendant's claim which reportedly occurred on September 24, 2009. (Doc. 25-8). The letter stated that appraisal was premature and that it was necessary for the insured "to comply with their post loss obligations" and allow

Scottsdale "to complete a full investigation of the claim" before the amount of the loss would be addressed. (Doc. 25-8, p. 2). Scottsdale's letter went on to state that Scottsdale reserved its rights to assert policy provisions, exclusions and conditions during the investigation of the claim, but that the letter was not a denial of the claim. (Doc. 25-8, pp. 2-3).

Defendant's representative testified to the authenticity of certain receipts that defendant submitted to support its claim, but has not provided any record of payment. Defendant's representative testified that it paid an invoice from Servpro for $4,619.42. (Doc. 25-6, pp. 6, 15, 17; Doc 25-9). However, Servpro states that the receipt is not one of its business records and that it appears to be cut from their yellow pages ad and pasted onto another form. (Doc. 25-10, p. 2). The format is not like what Servpro uses. (doc. 25-10, p. 2). Servpro has no record of ever doing work for or receiving payment from defendant. (Doc. 25-10, p. 2). Defendant also submitted an invoice for services performed by Fiberglass Unlimited for repair to the church's steeple. (Doc. 25-11). Fiberglass Unlimited has no record of doing any work for defendant. (Doc. 25-12). The exemplary copies of Fiberglass Unlimited's invoices do not match the invoice submitted by defendant. (Doc. 25-13). The heading and portions of one of Fiberglass Unlimited's ads appears to match the heading on the invoice submitted by defendant. (Doc. 25-13, p. 5).

The policy includes the following provisions:

4

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

* * * *

**2. Appraisal**
If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will
a. Pay its chosen appraiser; and
b. Bear the other expenses of the appraisal and umpire equally
If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event of Loss Or Damage**
a. You must see that the following are done in the event of loss or damage to Covered Property:
(1) Notify the police if a law may have been broken.
(2) Give us prompt notice of the loss or damage to Covered Property.
(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.
(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.
(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.
(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and

records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

\* \* \* \*

**COMMERCIAL PROPERTY CONDITIONS**

This Coverage Part is subject to the following conditions, the Common Policy conditions and applicable Loss Conditions and Additional Conditions in Commercial Property coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**
This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

(Doc. 1-1, pp. 32-33, 38).

## **DISCUSSION**

### **A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party,

7

and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-

8

Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Plaintiff's Claims**

Plaintiff's complaint seeks a declaration that the policy issued to defendant is void or that no coverage exists for any supplemental Hurricane Ivan or Katrina claims due to the defendant's intentional material representations. Scottsdale has offered evidence that indicates that defendant has misrepresented some of its claimed losses. Defendant submitted to Scottsdale copies of invoices for repairs it alleges it paid, but has been unable to produce any record of having actually paid the invoices or showing that the work was done. Although defendant's representative testified to the authenticity of the invoices, Servpro and Fiberglass Unlimited show no record of doing any work for defendant. Additionally, the invoices do not look like the invoices these two companies use. In fact, a comparison of the yellow page ads for both these companies appear to match exactly the heading portion of the invoices submitted as if they were cut out and pasted onto an invoice form and copied. The evidence clearly indicates that these invoices were made up or altered and although defendant denied such allegations in its answer, it has offered no evidence or even argument to dispute

9

these allegations. "In opposing a motion for summary judgment, a 'party may not rely on his pleadings to avoid judgment against him.'" Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995), cert. denied sub nom., Jones v. Resolution Trust Corp., 516 U.S. 817 (1995)(citing Ryan v. Int'l Union of Operating Eng'rs., Local 675, 794 F.2d 641, 643 (11th Cir. 1986)). Moreover, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." Id. at 599 (citations omitted).

The policy clearly states that commercial property coverage is void if defendant intentionally conceals or misrepresents a material fact concerning a claim. Whether defendant incurred the losses it claims in the amounts claimed are clearly material facts concerning the claim. Accordingly, the court finds that the commercial property coverage is void.

Defendant argues that Scottsdale breached the contractual obligations by failing to name its appraiser in response to defendant's demand for appraisal. As such, defendant argues that Scottsdale can no longer seek relief or assert the terms of the policy as a defense. However, under the circumstances, Scottsdale was clearly within its rights to investigate the claim before proceeding with the appraisal process. Under Alabama law, "the insured… bears the burden of establishing coverage by

10

demonstrating that a claim falls within the insurance policy." Assurance Co. of Am. v. Admiral Ins. Co., 2011 WL 1897589, at *3 (S.D. Ala. May 18, 2011). Defendant seems to believe that because Scottsdale found that defendant had coverage in 2004 and 2005 for the original claims submitted it cannot deny coverage for any additional claims submitted four years later. Scottsdale still has the right under the policy to require defendants to comply with their post loss duties for each claim, including prompt notice of the loss; providing a description of how, when, and where the loss occurred; and permitting Scottsdale to examine defendant's books and records. Defendant did not comply with all of its duties and defendant has not pointed to anything in the policy that would require Scottsdale to name an appraiser before it completes its investigation of the claim. Scottsdale's actions or inactions did not breach the contract of insurance. Accordingly, the court finds that Scottsdale is entitled to a declaratory judgment stating that the policy issued by Scottsdale Insurance Company to defendant is void and that no coverage exists for the supplemental Hurricane Ivan or Katrina claims submitted by defendant due to the intentional material misrepresentations made by defendant.

**C. Defendant's Counterclaims**

Defendant filed a counterclaim for appointment of an umpire and continuation of the appraisal proceedings under the insurance contract and for bad faith refusal to pay. As discussed above with regard to defendant's claims, defendant has failed to

11

establish that Scottsdale was required to begin the appraisal proceedings under the contract and has failed to show that its supplemental claim is covered under the circumstances. Accordingly, defendant's counterclaims also fail. See Mitchell v. State Farm Fire & Cas. Co., 642 So.2d 462, 466-67 (Ala. 1994)(noting that absent contractual liability, an insured's bad faith claim fails as a matter of law); State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 317 (Ala. 1999)(recognizing that liability for bad faith is limited "to those instances in which the insured's losses [are] covered under the policy").

## **CONCLUSION**

For the reasons stated above, plaintiff's motion for summary judgment (Doc. 25) is hereby **GRANTED.**

**DONE** and **ORDERED** this 2nd day of August, 2011.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE